IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| | §     **Criminal Action No.** |
| vs. | §     **3:18-CR-303-S** |
| | § |
| BRIAN KEITH McKENZIE | § |

### FINDINGS, CONCLUSION AND RECOMMENDATION

By electronic order of reference dated May 24, 2023 (doc. 70), before the Court for recommendation are the *Petition for Person Under Supervision*, filed October 13, 2022 (doc. 60), and an *Addendum to Petition for Person Under Supervision*, filed June 7, 2023 (doc. 74). The defendant appeared in person and through counsel for a final revocation hearing on August 31, 2023. Based on the filings, evidence, testimony, oral argument, and applicable law, the defendant's term of supervised release should be **REVOKED**, and he should be sentenced to an additional term of imprisonment of **EIGHTEEN (18) MONTHS**, with no additional term of supervised release to follow.

### I. BACKGROUND

On June 13, 2018, Brian Keith McKenzie (Defendant), was charged by indictment with mailing threatening communications in violation of 18 U.S.C. § 876(c) and threats against the president and successors to the presidency in violation of 18 U.S.C. § 871(a). (*See* doc. 1 at 1-2.)[1] He pleaded guilty to count one of the indictment charging him with mailing threatening communications in violation of 18 U.S.C. § 876(c), and by judgment dated March 19, 2021, he was sentenced to 60 months, to be followed by a three-year term of supervised release. (*See* docs. 1, 26-28, 30, 33, 56.) He began his term of supervised release on June 21, 2022. (*See* doc. 60.)

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

A.   **Petition**

On October 13, 2022, the supervising United States Probation Officer (USPO) submitted a petition for person under supervision (Petition) alleging the following violations:

I.

**Violation of Mandatory Condition No. 2**

The defendant shall not unlawfully possess a controlled substance.

**Violation of Mandatory Condition No. 3**

You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the Court.

**Violation of Special Condition**

The defendant shall participate in an outpatient program approved by the probation officer for treatment of narcotic, drug, or alcohol, dependency that will include testing for the detection of substance use, abstaining from the use of alcohol and all other intoxicants during and after completion of treatment, and contributing to the costs of services rendered (copayment) at a rate of at least $20 per month.

**Nature of Noncompliance**

Brian Keith McKenzie violated these conditions of supervised release by using and possessing marijuana, an illegal controlled substance, in or about July 2022. On July 19, 2022, Mr. McKenzie admitted, verbally and in writing, to Senior U.S. Probation Officer Jason Mabry (Sr. USPO Mabry) that he used marijuana on July 12, 2022.

II.

**Violation of Standard Condition No. 5**

You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

**Violation of Standard Condition No. 6**

You must allow the probation officer to visit you at any time at your home or elsewhere, and

you must permit the probation officer to take any items prohibited by the conditions of your supervision that her [sic] or she observe in plain view.

**Nature of Noncompliance**

Mr. McKenzie violated these conditions of supervised release when he failed to notify his probation officer of his change in residence at least 10 days in advance or notify the probation officer within 72 hours of becoming aware of a change or expected change. On September 5, 2022, Sr. USPO Mabry received a voicemail from Shannon Harper, who advised Mr. McKenzie left the group home on September 1, 2022, and has not returned. On September 6, 2022, Sr. USPO Mabry contacted Mr. McKenzie's collateral contacts, who advised they had not seen or spoken to Mr. McKenzie. Mr. McKenzie's whereabouts are currently unknown, and he has absconded from supervision. Sr. USPO Mabry's last contact with Mr. McKenzie was a telephone call on August 31, 2022.

(*See* doc. 60.)

**B.   Addendum to Petition**

On June 7, 2023, the USPO submitted an addendum to the petition for person under supervision (Addendum) that alleged the following additional violations of Defendant's conditions of supervised release:

**I.**

**Violation of Mandatory Condition**

You must not commit another federal, state, or local crime.

**Violation of Mandatory Condition**

You must not unlawfully possess a controlled substance.

**Nature of Noncompliance**

On May 19, 2023, Brian McKenzie violated these conditions of supervised release when he was found in possession of an illegal controlled substance and drug paraphernalia, and subsequently attempted to provide fictitious identification to an officer, as evidenced by his arrest for Possession of a Controlled Substance in Penalty Group 1, Possession of Drug Paraphernalia, and Failure to Identify Fugitive Intent Give False Information. According to Cleburne, Texas police report no. 23-01188, on May 19, 2023, an officer observed a suspicious individual holding a bag near a hotel known for narcotics trafficking. As the officer approached the individual, he smelled marijuana odor emitting from the individual. The Officer asked for identification, to which the individual initially provided the fictitious name

> Brien Keith, with a date of birth of April 1, 1965. The officer conducted a records check using the information provided by the individual; however, no records were located. The officer observed the individual to be nervous and unwilling to make eye contact. Based on the individual's nervousness and the marijuana odor emitting from the individual, the officer conducted a search of his persons. The officer located a marijuana cigarette in the individual's pants pocket and a Texas Identification Card identifying the individual as Brian McKenzie, with a date of birth of April 1, 1966. Additionally, the officer searched Mr. McKenzie's bag and discovered a digital scale and three clear plastic bags containing a crystal-like substance. A field test was conducted a confirmed the crystal-like substance to be methamphetamine. Mr. McKenzie was subsequently arrested. The case remains pending.

(*See* doc. 74.)

**C.**     **Hearings**

Defendant was arrested and made his initial appearance in this district on May 22, 2023. (*See* doc. 64.) On that date, he waived his right to a preliminary hearing under Fed. R. Civ. P. 32.1 and to a detention hearing, after which he was ordered detained pending a revocation hearing. (*See* docs. 67, 68, 69.)

Defendant appeared for a final revocation hearing on August 31, 2023. After his competence was established, Defendant testified under oath that he understood the violations alleged in the Petition and Addendum, and the range of punishment for those violations. He also understood that he had the right to plead not true and have a hearing concerning whether he committed those violations, and that revocation was mandatory. Despite his understanding, Defendant knowingly and voluntarily consented to enter a plea of true to the violations alleged in the Petition before a United States Magistrate Judge. He sought to be heard, however, on the violations alleged in the Addendum and the appropriate sentence.

The USPO testified that Defendant began his term of supervised release on June 21, 2022, and that he first met with Defendant on July 5, 2022. Defendant absconded from supervision shortly thereafter, and on October 4, 2022, a warrant for his arrest was requested. The USPO had no information about Defendant's whereabouts until he received a report from the Cleburne Police

Department stating that Defendant had been arrested on May 19, 2023, for Possession of a Controlled Substance in Penalty Group 1, Possession of Drug Paraphernalia, and Failure to Identify Fugitive Intent Give False Information. Over Defendant's objection on confrontation grounds, two body camera videos of his arrest and a surveillance video of him outside a hotel shortly before his arrest were admitted into evidence. The USPO identified the individual shown in the videos as Defendant.

The surveillance video (Exhibit 1) shows Defendant carrying a bag and walking up to the outside of a hotel, where he leaned against the wall near the entrance door and began looking a cell phone. The first video of Defendant's arrest, Exhibit 2, shows a police officer driving up to the hotel and parking near the entrance as Defendant is walking towards him. Defendant is not carrying a bag. The officer tells Defendant that he smells like marihuana and asks if he has or has been smoking marihuana. When asked for his name, Defendant responds "Brian Keith" and provides a date of birth. He specifically states that his last name is "Keith." The officer returns to his vehicle and runs an inquiry based on the information Defendant provided. The officer asks Defendant if he has a driver's license or identification card and whether he has middle name. Defendant denies having a middle name and confirms more than once that his name is "Brian Keith", and he claims he had identification out of California. The officer again tells Defendant that he smelled like marihuana and seems very intoxicated. He tells Defendant he is going to pat him down, and he finds a wallet containing Texas identification in Defendant's pocket. Defendant is placed in handcuffs and searched.

The officer states that he is going to get Defendant's bag for him as he walks toward the hotel entrance, where the bag is laying on the ground, and Defendant denies that the bag is his. The officer says it is Defendant's; Defendant was holding it. A search of the bag, which is actually a backpack, yields clear bags of a white substance and a scale. The officer says that it looks like crystal methamphetamine. He weighs the substance on the scale, says it weighs 24 grams, conducts a field

test on it, and tells Defendant that the test is positive for methamphetamine. He tells Defendant that he is being held on an out-of-state warrant and that he is also being charged with possession of the drugs in the bag. He tells Defendant that witnesses have stated that Defendant was walking around with the bag, that surveillance video is being reviewed, and that he is on video with the bag. He then places Defendant in the squad car.

The second video (Exhibit 3) from the body camera of a different officer shows the officer going into the hotel and talking to an employee, who states that Defendant is not staying at the hotel, contrary to what Defendant told another officer. The officer asks Defendant his name, and he says "Brian Keith." It shows Defendant being placed in handcuffs, but from a different angle than the first arrest video (Exhibit 2). Someone asks for surveillance video to be pulled. The officer walks up to the employee, who says that the manager is coming. The employee states that she saw Defendant walking around with the bag. The officer tells Defendant that he is about to go look at video of him carrying the bag. The manager approaches the officer, who asks him for specific surveillance video, and the manager shows it to him on his cell phone. The video on the cell phone can be seen on the officer's body camera, and it shows Defendant carrying the bag. It appears to be the same video as the surveillance video (Exhibit 1). The officer asks the manager if he can send the video, and the manager says he will email the video to the officer. Also admitted without objection was a laboratory report confirming that the white substance in one of the clear bags found in the backpack contained 14 grams of methamphetamine; the other two bags were not tested.

Based on the testimony and evidence, including the videos, the Court found that the Government had established by a preponderance of the evidence that Defendant committed the violations alleged in the Addendum. It was orally recommended that Defendant's plea of true to the violations in the Petition be accepted by the district judge, that Defendant's objections, including the

confrontation objection, to the admission of the videos be overruled, that Defendant be found to have committed the violations alleged in the Addendum, that his term of supervised release be revoked, and that he be sentenced to an additional term of imprisonment of **EIGHTEEN (18)** months with no additional term of supervised release.  To the extent that the Defendant's objection was sustained by the district judge, or that he was not found to have committed the violations alleged in the Addendum, it was alternatively recommended that Defendant's term of supervised release be revoked, and that he be sentenced to an additional term of imprisonment of **THIRTEEN (13)** months with no additional term of supervised release.  Defendant was advised that (1) a formal written recommendation would issue; (2) he would have 14 days to object to the recommendation; (3) he had a right to appear and speak, and to have his counsel appear and speak, before the district judge prior to sentence being imposed; and (4) that he could waive these rights.

## II. OBJECTION

At the revocation hearing, Defendant objected to the admission of the surveillance and arrest videos (Exhibits 1-3) on grounds of hearsay and hearsay within hearsay, as well as on confrontation grounds.

Persons facing revocation of terms of supervised release have the right to confrontation under the Due Process Clause.  *See United States v. Jimison*, 825 F. 3d 260, 263 (5th Cir. 2016) (citing *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)).  "'[T]he hearing officer [may] specifically find[] good cause for not allowing confrontation' at a revocation hearing", however. *Id.* (quoting *Morrissey*, 408 U.S. at 489).  This "requires 'weigh[ing] the defendant's interest in confrontation of a particular witness against the Government's proffered reasons for pretermitting the confrontation.'" *Id.* (citing *United States v. Minnitt*, 617 F.3d 327, 333 (5th Cir. 2010)).  The hearing officer must "make 'an explicit, specific finding of good cause' for not allowing confrontation of a particular witness." *Id.*

(quoting *United States v. Grandlund*, 71 F.3d 507, 510 n. 6 (5th Cir. 1995)).

In *Jimison*, the Fifth Circuit noted that a video recording "does not give rise to a confrontation right." 825 F.3d at 264. Even if the videos in this case implicate Defendant's confrontation rights because they were the only evidence of the Grade B violations which trigger mandatory detention, as alleged in the Addendum, good cause existed for not calling the Cleburne police officers who arrested him to testify in person at the revocation hearing. In response to the confrontation objection, the Government argued that good cause existed because it would take the Cleburne officers one hour to travel to Dallas and another hour to travel back to Cleburne, but their testimony would not add to what was shown on the videos from their body cameras. The Fifth Circuit has "recognized that the government may prevail in the balancing inquiry when the hearsay testimony has strong indicia of reliability." *Id.* at 265. The surveillance video and two consistent videos of the events and arrest from the body cameras of two different officers, one of which shows the officer initially reviewing the hotel surveillance video, meet this standard. The Government also had a substantial interest in avoiding taking police officers away from their duties for several hours when their testimony would largely track what was shown on the videos. *See Minnett*, 617 F.3d at 334 (finding that in addition to the substantial indicia of reliability of lab results, "the Government had a substantial interest in avoiding the expense, difficulty, and delay in securing the lab technicians to testify"). Good cause existed for not allowing confrontation of the Cleburne police officers at the revocation hearing, and Defendant's objections, including the confrontation objection, should be overruled.

### III. SENTENCE

Section 3583(e)(3) of Title 18 provides that after considering the factors set out in § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), a court may

> revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term

of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case[.]

18 U.S.C. § 3583(e)(3). The relevant factors in § 3553(a) to be considered are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> ***
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> ***
> (4) the kinds of sentence and the sentencing range established for--
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
>>> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>>> (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
>> (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
> (5) any pertinent policy statement--
>> (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>> (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. §§ 3553(a), 3583(e)(3).[2] Revocation of a term of supervised release is mandatory if the defendant possesses a controlled substance, possesses a firearm, refuses to comply with drug testing, or tests positive for illegal controlled substances more than three times over the course of one year. 18 U.S.C. § 3583(g).

Based on his knowing and voluntary plea of true to the violations in the Petition, the Court finds that Defendant has violated Mandatory Condition No. 2 concerning unlawful possession of a controlled substance, Mandatory Condition No. 3 concerning refraining from unlawful use of a controlled substance and testing, the Special Condition concerning treatment, Standard Condition No. 5 concerning residence, and Standard Condition No. 6 concerning supervision, as alleged in the Petition. Based on the evidence at the hearing, the Court also finds that Defendant has violated the Mandatory Conditions concerning commission of another crime and unlawful possession of a controlled substance, as alleged in the Addendum. Because he violated his conditions of supervised release by possessing a controlled substance, revocation of his supervised release is mandatory.

As set out in the Addendum, the statutory maximum term of incarceration upon revocation of Defendant's supervised release is two years. (*See* doc. 74 at 3, citing 18 U.S.C. § 3583(e)(3).) Based upon a violation grade of B and a criminal history category of V, the resulting range of imprisonment under United States Sentencing Guideline (USSG) § 7B1.4(a) is 18 to 24 months. (*See id.*) Defendant may also be placed back on supervised release following any term of imprisonment imposed upon revocation, but the maximum term of supervised release must not exceed the term of supervised release authorized by state for the offense that resulted in the original term of supervised release, less

---

[2]The Fifth Circuit Court of Appeals has held that courts may not consider the factors listed in § 3553(a)(2)(A), which include "the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," when revoking a term of supervised release. *United States v. Miller*, 634 F.3d 841 (5th Cir. 2011). Nor may courts impose or lengthen a prison term in order to foster a defendant's rehabilitation. *United States v. Tapia*, 131 S.Ct. 2382 (2011).

any term of imprisonment imposed upon revocation. (*See id.*, citing 18 U.S.C. § 3583(h); *U.S v. Jackson*, 559 F.3d 368 (5th Cir. 2009).) Defendant is subject to a maximum term of supervised release of three years, minus the revocation sentence. (*See id.,* citing 18 U.S.C. § 3583(h).)

After considering only the facts alleged in the Petition and Defendant's plea of true to those facts, and the evidence presented during the revocation hearing, as well as the relevant factors identified in § 3583(e) that are set forth in § 3553(a), and not considering any factor that it is precluded from considering under Supreme Court or Fifth Circuit authority, the Court finds that a custody sentence of **EIGHTEEN (18)** months, with no additional term of supervised release to follow, is sufficient but not greater than necessary to accomplish the relevant sentencing objectives. This sentence is warranted under the facts of this case set out in the Petition and presented at the hearing. Within three weeks of beginning his term of supervision, Defendant admittedly used marihuana, and he absconded from supervision approximately one and one half months later. His whereabouts were not known until his arrest in Cleburne about nine months later for possession of methamphetamine. His failure to utilize the services provided by the U.S. Probation Office and commission of a new offense demonstrates that he was neither willing nor ready to commit to behavioral change. Defendant did not give himself the opportunity to succeed on supervised release after being given a fair opportunity to do so, and a custody sentence will assist in serving as a deterrent to further drug use and criminal behavior. Because of his undisputed long-standing serious mental health issues, a sentence at the bottom of the guideline range is appropriate, however.

For the same reasons, if Defendant's confrontation objection is sustained, or he is found to not have committed the violations alleged in the Addendum, his term of supervised release should be revoked, and he should be sentenced to an additional term of imprisonment of **THIRTEEN (13)**

months, with no additional term of supervised release.[3]

## IV.  RECOMMENDATION

Defendant's plea of true to the violations in the Petition should be **ACCEPTED**; his objections, including on confrontation grounds, to the admission of the videos should be **OVERRULED**; he should be found to have committed the violations in the Addendum; his term of supervised release should be **REVOKED**; and he should be committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of **EIGHTEEN (18) MONTHS**, with no additional term of supervised release to follow.  If Defendant's confrontation objection is sustained or he is found to not have committed the violations alleged in the Addendum, his term of supervised release should be revoked, and he should be sentenced to an additional term of imprisonment of **THIRTEEN (13)** months, with no additional term of supervised release.  The Court should recommend that Defendant be housed in a Bureau of Prisons facility in Fort Worth, Texas, or Springfield, Missouri, if appropriate, so that he may receive mental health services while in custody.

**SO RECOMMENDED** on this 1st day of September, 2023.

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[3] For the violations set out in the Petition, the statutory maximum term of incarceration upon revocation of Defendant's supervised release is two years.  (*See* doc. 60 at 3, citing 18 U.S.C. § 3583(e)(3).)  Based upon a violation grade of C and a criminal history category of V, the resulting range of imprisonment under United States Sentencing Guideline (USSG) § 7B1.4(a) is 7 to 13 months.  (*See id.*)  Defendant would also be subject to a maximum term of supervised release of three years, minus the revocation sentence.  (*See id.*, citing 18 U.S.C. § 3583(h).)

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

  A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE